UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


In re:                                                                                  Case No.: 09-30419-LMK

LEISURE TYME RV, INC.,
    *Debtor*.


JOHN E. VENN, TRUSTEE                                          Adv. Proc. No.: 10-03015-MAM
    *Plaintiff*,

v.

GE COMMERCIAL DISTRIBUTION
FINANCE CORP.,
    *Defendant*.


**ORDER GRANTING GE COMMERCIAL DISTRIBUTION
FINANCE CORPORATION'S MOTION FOR SUMMARY JUDGMENT**


Buffy E. Klein, Attorney for GE Com. Distribution Finance Corp., Memphis, TN
Marshall C. Turner, Attorney for GE Com. Distribution Finance Corp., St. Louis, MO
John Venn, Trustee, Pensacola, Florida


This matter is before the Court on GE Commercial Distribution Finance Corporation's ("GE") Motion for Summary Judgment. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the Court has the authority to enter a final order. For the following reasons, GE's Motion for Summary Judgment is due to be GRANTED.

**FACTS**

For purposes of this Motion for Summary Judgment, the facts will be viewed by the Court and stated here in a light most favorable to Trustee as the non-moving party. Prior to these

1

bankruptcy proceedings, Leisure Tyme RV, Inc. ("Leisure Tyme") operated a retail RV business from locations in Mary Ester, Florida, and Summerdale, Alabama.  On November 14, 1994, ITT Commercial Finance Corporation ("ITT") filed a UCC-1 financing statement with the Florida Secretary of State in order to perfect its interest in Leisure Tyme's right, title, and interest in the collateral, then existing or thereafter acquired.  ITT was succeeded in interest by Deutsche Financial Services ("DFS") who filed amendment and continuation documents with the Florida Secretary of State.

In May of 1996, Leisure Tyme executed and entered into an Agreement for Wholesale Financing with DFS.  Subsequently, Leisure Tyme and DFS also entered into and executed various amendments and agreements which are referred to (along with the Wholesale Financing Agreement) as the "Security Documents."  Pursuant to the Security Documents, Leisure Tyme granted DFS a security interest in certain collateral owned by the Debtor, including all "inventory, equipment, fixtures, accounts, contract rights, chattel paper, security agreements, instruments, documents of title, deposit accounts reserves, documents, and intangibles; and all judgments, claims, insurance policies, and payments owed or made to Dealer thereon; all whether now owned or hereafter acquired and all attachments, accessories, accessions, substitutions, and replacements thereto and all proceeds thereof."  GE succeeded DFS in interest on November 1, 2002 (and later merged with Transamerica Commercial Finance Corporation on October 18, 2004).  As successor in interest to DFS, GE continued to finance Leisure Tyme's RV inventory.

Leisure Tyme filed a voluntary Chapter 7 petition on March 13, 2009, and a Trustee was appointed in the case. In the 90 days before filing, Leisure Tyme made the following transfers to GE from its bank account at First National Bank and Trust:[1]

| MODEL | VIN | DATE SOLD BY DEBTOR | DATE & AMT OF CASH REC'D BY DEBTOR | DATE MONIES PAID TO GE | AMOUNT PAID TO GE |
|---|---|---|---|---|---|
| 2008 Torrey | 310242 | 11-19-2008 | 11-19-2008 $62,000.00 | 12-22-2008 | $40,775.00 |
| 2008 Cypress | 221201 | 12-8-2008 | 12-10-2008 $42,102.00 | 12-22-2008 | $35,543.00 |
| 2000 Bounder | 9312 | 12-15-2008 | 12-15-2008 $38,750.00 | 1-13-2009 | $26,613.50 |
| 2007 Conquest | 1089226 | 12-22-2008 | 12-22-2008 $11,000.00 | 1-13-2009 | $9,783.50 |
| 2006 America-Camp | 2496 | 12-23-2008 | 12-23-2008 $10,256.00 | 1-13-2009 | $8,789.50 |
| All Star | 55536 | 11-16-2008 | 11-19-2008 $139,900.00 | 1-16-2009 | $76,142.50 |
| 2007 Express | 36148 | 12-15-2008 | 12-18-2008 $37,506.00 | 1-16-2009 | $34,051.00 |
| 1999 Eagle | 69668 | 12-30-2008 | 12-31-2008 $15,000.00 | 1-29-2009 | $9,027.85 |
| Dutch Star | 54361 | 1-9-2009 | 1-15-2009 $140,000.00 | 2-6-2009 | $50,000.00 |

On April 2, 2009, GE filed a Motion for Relief from Stay seeking the Court's permission to exercise its state law rights and remedies, seeking turnover of all RVs and collateral, authorizing GE to file a proof of claim for deficiencies, and seeking discharge of bonds posted in

---

[1] There appear to be some discrepancies between the Trustee and GE's calculation of the amount of proceeds paid to Debtor (column 4). For purposes of the Motion for Summary Judgment, the Trustee's numbers from the Plaintiff's Response to Defendant's First Set of Interrogatories have been used. Regarding the amounts that were transferred from the Debtor to GE, there do not appear to be any disparities once the interest amounts are added, therefore there are no material issues of fact to resolve regarding the final amount of the transfers made from the Debtor to GE.

3

prepetition proceedings. On April 28, 2009, the bankruptcy court granted GE's Motion for Relief from Stay stating in part that GE "may proceed to exercise any and all of its state law and contractual rights and remedies with respect to the Debtor's collateral in which Creditor has a secured interest . . . including, without limitation, obtaining possession of the Collateral, liquidating the Collateral and applying the proceeds of the Collateral to the Debtor's obligations to GE."

The Trustee initiated this adversary proceeding against GE on April 28, 2010, seeking to avoid $333,942.72 (as amended) in preferential transfers under 11 U.S.C. § 547. GE filed its Motion for Summary Judgment on February 23, 2011, agreeing that it received the money from Leisure Tyme during the preference period, but arguing that the transfers were not preference payments because GE did not receive more than it would have in a chapter 7 case. The Trustee argues that other creditors (such as First National) had an interest in the proceeds that were deposited in the bank account, that GE cannot prove the proceeds it received were its own collateral, and that as an undersecured creditor GE received more than it would have received in a chapter 7 liquidation.

## LAW

### A.

A motion for summary judgment is controlled by Rule 56 of the Federal Rules of Civil Procedure, which is applicable to bankruptcy proceedings pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure. A court shall grant summary judgment to a moving party when the movant shows that "there is no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056(c). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2502, 91 L.Ed. 2d 2020 (1986), the Supreme Court found that a judge's function is not to determine the truth of the matter asserted or weight of the

evidence presented, but to determine whether or not the factual disputes raise genuine issues for trial. *Anderson*, 477 U.S. at 249-50. In making this determination, the facts are to be looked upon in the light most favorable to the nonmoving party. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986); *Allen v. Bd. Of Public Educ. for Bibb County*, 495 F.3d 1306 (11th Cir. 2007). The moving party bears the burden of proving there is no issue as to any material fact and that judgment should be entered as a matter of law. Fed. R. Bankr. Pro. 7056(c). Proof must be by a preponderance of the evidence. *See, e.g*, *In re McKinnon*, 378 B.R. 405, 411 (Bankr. S.D. Ga. 2007) (stating that "the default standard of proof in a bankruptcy case" is preponderance of the evidence).

B.

11 U.S.C. § 547(b) authorizes a trustee to avoid any transfer of an interest of the debtor in property:

> To or for the benefit of a creditor;
> For or on account of an antecedent debt owed by the debtor before such transfer was made;
> Made while the debtor was insolvent;
> Made (A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> That enables such creditor to receive more than such creditor would receive if (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provision of this title.

The Trustee bears the burden of proving the existence of each of these elements. *In re Southern Air Transport, Inc.*, 511 F.3d 526, 534 (6th Cir. 2007). In the present case, the issue is whether the Trustee can meet his burden regarding paragraph 5 of § 547(b). It is the finding of the Court that the Trustee cannot meet this burden.

The Trustee argues that GE is an undersecured creditor receiving more than it would in a chapter 7 liquidation because any payments to it are first applied to the unsecured portion of its debt. However, for purposes of preference avoidance, an undersecured creditor does not receive more through preference period transfers than it would have received in a chapter 7 liquidation where the creditor has a blanket perfected security interest in the debtor's assets. *See In re Terrific Seafoods, Inc.*, 197 B.R. 724 (Bankr. D. Mass. 1996). "Even if the payment in question was applied to the unsecured portion of an undersecured creditor's claim, the creditor will not be deemed to have received a greater percentage as a result of the payment if the source of the payment is the creditor's own collateral. A creditor who merely recovers its own collateral receives no more as a result than it would have received anyway had the funds been retained by the debtor, subject to the creditor's security interest." *In re Norwalk Furniture Corp.*, 428 B.R. 419, 426-27 (Bankr. N.D. Ohio 2009) (*citing Krafsur v. Scurlock Permian Corp.* (*In re El Paso Refinery, L.P.*) 171 F.3d 249, 254 (5th Cir. 1999)).

Based on the security documents executed by Leisure Tyme, GE has a blanket lien in Leisure Tyme's collateral. Regardless of whether GE was secured, unsecured, or undersecured, it was collecting on its *own* collateral when it received the transfers in the 90 days preceding filing and did not receive more than it would have received in a chapter 7 liquidation. As a matter of law, the Trustee cannot meet his burden under § 547(b)(5), and GE has proven beyond a preponderance of the evidence that judgment should be entered in its favor.

THEREFORE it is ORDERED that GE's Motion for Summary Judgment dismissing the Trustee's complaint is due to be GRANTED. A final judgment shall be entered on behalf of GE in accordance with this opinion.

Dated: April 18, 2011

/s/ Margaret A. Mahoney
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE